## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Sick, Inc., a Minnesota corporation, | ) | Civil File No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| 21st Century Software, Inc., a Virginia corporation, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Sick, Inc. ("Plaintiff"), as and for its Complaint against 21st Century Software, Inc. ("Defendant"), states and alleges as follows:

### PARTIES

1.      Plaintiff is a Minnesota corporation doing business at 6900 West 110th Street in Bloomington, Hennepin County, Minnesota 55438.

2.      Defendant is a Virginia corporation doing business at 43416 Colter Court in Ashburn, Loudoun County, Virginia 20147.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1332 (diversity) because there is a complete diversity of citizenship between the parties and the matter in controversy exceeds, exclusive of interest and costs, seventy-five thousand ($75,000.00) dollars.

4.      Venue lies in the District of Minnesota under 28 U.S.C.A. §§ 1391(a)(2) in that the claims arose in this judicial district as a result of acts committed by Defendant

within this judicial district in the course of Defendant doing business in this judicial district.

## JURY DEMAND

5.     Plaintiff demands a jury trial of any factual issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## FACTS

6.     Plaintiff is one of the world's leading manufacturers of factory and process automation technology with more than 450 patents for photoelectric sensors, safety systems, and bar code scanners.  It also provides computer consulting services.

7.     On April 22, 2011, the United States Post Office ("USPS") invited Plaintiff to bid on a Flat Sequencing System Software Maintenance Contract ("Contract") as a pre-qualified candidate.

8.     The USPS had previously contracted with Northrop Grumman to develop the Flat Sequencing System Software, and needed a vendor to maintain the software. USPS first offered the Contract to Northrup Grumman; however, Northrop Grumman turned it down.   Therefore, the USPS eventually decided to re-bid the work via competitive process.

9.     Prior to receiving the invitation to bid on the Contract, Plaintiff had an established working relationship with the USPS on other contracts.

10.     On May 12, 2011, Plaintiff submitted its bid proposal to the USPS for the Contract.

11.     On or about May 12, 2011, Defendant also submitted a bid proposal to the

2

121284979v2 0879917 63270

USPS for the Contract.

12.    The Contract was a personnel specific contract, expressly requiring that designated personnel be used by bidders to complete the Contract.

13.    Several of the key personnel that Plaintiff identified in its bid proposal were contract employees who had worked with Northrop Grumman on the original contract, including, without limitation, Manfred Foxx ("Foxx") and Veronika Gospodareva ("Gospodareva") who were contracted out to Northrop Grumman by Defendant.

14.    Prior to submitting its bid proposal to the USPS, Plaintiff communicated with these key personnel, including Foxx and Gospodareva, requesting their consent to be a part of the Contract in the event it was awarded to Plaintiff.  Each of these individuals agreed to work with Plaintiff on the Contract and a desire to continue working together as a group.

15.    On June 3, 2011, Plaintiff met with the USPS to review Plaintiff's proposal, including the technical aspects of Plaintiff's proposal, terms and conditions and proposed cost elements.  Following that meeting and review, the USPS gave Plaintiff's proposal a very favorable score and told Plaintiff that it would make an award decision by June 9.

16.    On June 8, 2011, Plaintiff again met with the USPS.  At that meeting, the USPS awarded Plaintiff the Contract.  The USPS reviewed the Contract with Plaintiff and provided a hardcopy of the Contract to Plaintiff for execution.

17.    After being awarded the Contract, Plaintiff devoted substantial resources in preparing to perform Contract services for the USPS.  Plaintiff entered into commitments, subcontracts and incurred substantial costs directly related to its contractual relationship

121284979v2  0879917  63270

with the USPS.

18.     On June 10, 2011, the USPS confirmed with Plaintiff by email its understanding as to Contract cost, key personnel involved in Contract implementation and the Contract's overall scope of work.  The USPS confirmed that the total amount to be paid to Plaintiff was $5,800,320.

19.     On June 13, 2011, the USPS sent an updated USPS Form 8203 award cover sheet to Plaintiff reflecting Contract pricing.  The USPS also requested confirmation that Plaintiff accepted the Contract and was ready to perform.

20.     On June 15, 2011, Plaintiff returned the executed Contract to the USPS.

21.     The USPS told other suppliers and bidders, including Defendant, that it had awarded the Contract to Plaintiff.  Plaintiff did not inform anybody of the Contract award.

22.     Upon information and belief, on or about June 9 or 10, 2011, Defendant met with at least some of the key personnel Plaintiff proposed to use to complete the Contract.

23.     Shortly after Defendant's meeting with these key personnel, Foxx and Gospodareva sent virtually identical emails to the USPS, indicating that they were aware that Plaintiff had won the Contract and indicating that they would not agree to work on the Contract with Plaintiff as the winner.

24.     Upon information and belief, in addition to meeting with the key personnel Plaintiff proposed to use, Defendant made representations to the USPS that certain of these key personnel had non-compete or other agreements in place which prevented them

4

from working with Plaintiff on the Contract.

25.     These representations made by Defendant to the USPS were false and intended only to cause USPS to terminate the Contract with Plaintiff and award it to Defendant.

26.     Defendant knew or should have known that the Contract was personnel-specific and that without key personnel, Plaintiff would not be able to perform under the Contract.

27.     Defendant, with knowledge of Plaintiff's business relationship and Contract with the USPS, intentionally and wrongly interfered with Plaintiff's business relationship and the Contract by representing to the USPS that Plaintiff could not perform the Contract.

28.     Defendant, with knowledge of Plaintiff's business relationship and Contract with the USPS, intentionally and wrongly interfered with Plaintiff's business relationship and the Contract by luring key personnel scheduled to work on the Contract away from Plaintiff to work for Defendant.

29.     Upon information and belief, after the USPS awarded the Contract to Plaintiff, Defendant intentionally and wrongly directed key personnel it poached from Plaintiff to contact the USPS and inform the USPS that they would not work for Plaintiff on the Contract.

30.     Key personnel lured from Plaintiff by Defendant contacted the USPS and told the USPS that they would not work for Plaintiff.

31.     On June 16, the USPS requested that Plaintiff confirm the availability of

121284979v2 0879917 63270

key personnel to perform the Contract. Plaintiff responded to the USPS's request as required and identified additional staffing to replace key personnel poached by Defendant with technically equivalent resources.

32.     On July 6, 2011, the USPS awarded the Contract to Defendant. The USPS confirmed that the new Contract value, with little or no additional work by key personnel, to Defendant was $7,224,934, whereas the value of the Contract awarded to Plaintiff was only for $5,800,320.

## COUNT I – INJUNCTIVE RELIEF

33.     Plaintiff restates and realleges all of the preceding paragraphs stated above and incorporates the same herein by reference.

34.     In reliance on the Contract between it and the USPS, Plaintiff entered into commitments, subcontracts and incurred substantial costs in preparing to perform the Contract.

35.     Defendant, with knowledge of Plaintiff's business relationship with the USPS and the Contract, intentionally and wrongfully interfered, and continues to interfere, with Plaintiff's business relationships and the Contract.

36.     Because of Defendant's intentional and wrongful interference, Plaintiff suffered, and continues to suffer, injury.

37.     Specifically, Plaintiff will suffer loss of goodwill and loss of the benefit of the bargain. Moreover, Plaintiff continues to incur costs on subcontracts and commitments it entered into to perform the Contract for the USPS.

38.     Plaintiff has a likelihood of success on its causes of action.

6

39.     Plaintiff suffers irreparable harm.

40.     Injury to Plaintiff without entry of a restraining order and/or injunctive relief outweighs any injury to Defendant from an award of this relief.

41.     Granting Plaintiff injunctive relief is in the public interest.

## COUNT II – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

42.     Plaintiff restates and realleges all of the preceding paragraphs stated above and incorporates the same herein by reference.

43.     Plaintiff had a reasonable expectation of economic advantage or benefit through its business relationship with the USPS.

44.     At all relevant times, Defendant had actual knowledge of Plaintiff's business relationship with the USPS.

45.     Without justification, Defendant intentionally and wrongly interfered with Plaintiff's business relationship with the USPS.

46.     Upon information and belief, Defendant poached key personnel from Plaintiff.

47.     Upon information and belief, Defendant directed those key personnel to contact the USPS and inform the USPS that they would not work for Plaintiff.

48.     Key personnel contacted the USPS and told the USPS that they would not work for Plaintiff.

49.     Upon information and belief, key personnel acted as agents for Defendant when they contacted the USPS.

7

50.     Defendant's wrongful actions caused the USPS to terminate its business relationship with Plaintiff.

51.     As a result of Defendant's tortious interference with Plaintiff's business relationship with the USPS, Plaintiff has been damaged in an amount in excess of $5.8 million.

## COUNT III - TORTIOUS INTERFERENCE WITH CONTRACT

52.     Plaintiff restates and realleges all of the preceding paragraphs stated above and incorporates the same herein by reference.

53.     The Contract was an enforceable contract between Plaintiff and the USPS.

54.     At all relevant times, Defendant had actual knowledge of the Contract.

55.     Without justification, Defendant intentionally and wrongly interfered with the Contract and caused the USPS to breach the contract.

56.     Upon information and belief, Defendant lured away key personnel from Plaintiff after the USPS awarded the Contract to Plaintiff.

57.     Upon information and belief, Defendant directed those key personnel to contact the USPS and inform the USPS that they would not work for Plaintiff to implement the Contract.

58.     Key personnel contacted the USPS and told the USPS that they would not work for Plaintiff.

59.     Upon information and belief, key personnel acted as agents for Defendants when they contacted the USPS.

60.     Defendant's wrongful actions caused the USPS to terminate the Contract

8

with Plaintiff.

61.     As a result of Defendant's tortious interference with contract, Plaintiff has been damaged in an amount in excess of $5.8 million.

**WHEREFORE,** Plaintiff Sick, Inc. requests this Court to enter an Order:

1.     Awarding Plaintiff a preliminary injunction enjoining Defendant 21st Century Software, Inc. from continuing to interfere with Plaintiff's Contract and business relations with the USPS;

2.     Awarding Plaintiff damages in an amount in excess of $5.8 million against Defendant 21st Century Software, Inc., including interest, with the exact amount to be determined at trial;

3.     Awarding Plaintiff its costs and attorney's fees; and

4.     For other such relief the Court finds just and equitable.


Dated: July 15, 2011.                    HINSHAW & CULBERTSON, LLP

                                         s/ Thomas P. Kane
                                         Thomas P. Kane (#53491)
                                         Shushanie E. Kindseth (#334819)
                                         333 South Seventh Street, Suite 2000
                                         Minneapolis, MN 55402
                                         Telephone:  612-333-3434
                                         Fax:  612-334-8888

                                         **ATTORNEYS FOR PLAINTIFF**

121284979v2 0879917 63270